## GOODBAR & CO. *v.* LILLIE AND SALLIE WEST.

**Attachment — Claim of Fund — Contest Between Creditors.**

An attaching creditor cannot avail himself of errors committed in the suit of a third party against the same defendant, it being strictly the privilege of the debtor to make objections to such irregularities therein.[1]

**Same — Lien — Validity.**

A lien is created by an attachment against a debtor, and a bill by a third party enjoining further proceedings under said attachment merely puts in issue the validity thereof.[2]

---

[1]
One who has attached property cannot take advantage of mere irregularities in prior attachments.   Hence a bill is not maintainable by such creditor to vacate a senior attachment on the ground that it was sued out in the name of a mere equitable owner of a note, the same having been indorsed to another as collateral security.   Jones *v.* Moody, 59 Miss. 327.

And a judgment overruling the motion of an attaching creditor to vacate the levy of a senior attachment on cotton in the field will not be disturbed where the record fails to show a valid levy by the junior creditor.   Whatever may be true of the validity of the levy, the junior creditor cannot question it unless he has procured such a levy upon the property as will give him precedence.   Scharff *v.* Chaffe, 68 Miss. 641, 9 So. 897.

On February 17, 1883, O. F. West and J. H. McPeak made a sale of their stock of goods, wares, and merchandise to one John L. Kline, which was declared fraudulent afterward, in April, in a suit by R. T. Abby against West & McPeak, in which Kline filed a claimant's issue, whereupon Lillie and Sallie West, minors, and sisters of O. F. West, filed their attachment suit against the firm of West & McPeak for an indebtedness of $600 each due them for borrowed money, by said firm, through O. F. West, their guardian. And a few days thereafter, on April 17th, appellants, Goodbar & Co., filed their bill in the Chancery Court to cancel and set

The ground on which a junior attaching creditor may procure the vacation of a senior attachment is that it operates as a fraud on him. Henderson *v.* Thornton, 37 Miss. 448.

2

Under the express provisions of Rev. Code 1892, § 147, the lien of attachment *held* not displaced by execution of forthcoming bond. C. D. Smith & Co. *v.* Lacey, 38 So. 311.

A judgment in attachment does not create a lien on the property attached, but consummates and perfects a lien initiated by the levy. Redus *v.* Wofford, 4 S. & M. 579.

The execution by defendant of a replevy bond, under the Act of 1843 (H. C., p. 819, art. 14), which bond is conditioned to have the property forthcoming to abide the order or decree of the court, does not destroy the lien created by the levy of the attachment, which lien, if consummated by a judgment, dates from the levy, and is superior to all other liens created subsequent to that time. Gray *v.* Perkins, 12 S. & M. 622; Montague *v.* Gaddis, 37 Miss. 453.

The right to an attachment and the proceedings to enforce the right, being wholly regulated by statute, it is only by compliance with its terms that the lien can be acquired or retained. Pfeifer *v.* Hartman, 60 Miss. 505.

An attaching creditor, though without a judgment, has such lien upon the property as will entitle him to enjoin its sale under a fraudulent attachment for rent sued out by a third person. Cogburn *v.* Pollock, 54 Miss. 639.

A creditor who, after an insufficient levy of a writ of attachment, files a bill to set aside as fraudulent a conveyance made by the debtor to his wife before the attachment, and thereby fixes a lien under Code Miss., §§ 1843, 1845, has priority, though the decree setting aside the conveyance, and subjecting the land to his debt, is not rendered till after judgment for plaintiff in the attachment proceedings. People's Bank *v.* West, 7 So. 513.

Where the interest of one tenant in common was attached, and the other tenant, with notice thereof, took a conveyance of the former's interest in satisfaction of a debt, after a sale of the land under the attachment, at which the plaintiff in the attachment became the purchaser, a decree of partition was properly made, as by the conveyance the tenant acquired only a right to pay off the lien of the attachment, which right was lost by the sale. Saunders *v.* McLean, 4 So. 299.

aside the sale to Kline, on the ground that it was fraudulent, and to enjoin the attachment proceedings of Lillie and Sallie West for the same reason, and seeking to subject the stock of goods to the payment of their debt of $642.54. In answer to which O. F. West denied the allegations of a fraudulent transfer, and alleged that he, as the guardian of Lillie and Sallie West, loaned to the firm of West & McPeak, of money belonging to his wards, $748.72, taking the notes of said firm in two equal amounts therefor, and that he, as an individual, owed to said minors $451.28, making a total indebtedness due said wards, $1,200.

This answer was accepted by and made the answer of J. H. McPeak, and the same answer made by O. F. West, guardian. A writ of sequestration was issued on the injunction and a motion was made to quash same, and to dissolve the injunction, and on the hearing the injunction was modified in so far as to allow the said Lillie and Sallie West to prosecute their suits against the firm of West & McPeak to judgment in the Circuit Court of Tunica county, and was made without prejudice to the complainants. The suits of Lillie and Sallie West were prosecuted to judgment without opposition of the defendants thereto, no objection being made to any irregularities in sheriff's return or otherwise. From the decree of the Chancery Court dismissing complainants' bill and sustaining the attachment of the minors, complainants appeal.

APPEALED from Chancery Court, Tunica county, J. G. HALL, Chancellor.

Affirmed, February 2, 1885.

*Attorneys for appellant, Malone & Watson.*

*Attorneys for appellees, Oglesby & Taylor.*

Brief of Malone & Watson:

Complainants having acquired a valid lien on the property of West & McPeak, by their proceedings in this cause, have the right to have the attachment proceedings of Lou West, Next Friend, *v.* West & McPeak, begun at law, vacated, if for any reason plaintiffs in said action at law have failed to acquire a valid lien on the property in controversy, for, if they failed to acquire a valid lien,

the attachment proceedings operate to hinder and delay complainants in the collection of what is admitted to be a joint demand, and are a fraud on their rights, and a court of chancery will enjoin perpetually further proceedings so far as they affect the property in controversy. Henderson v. Thornton, 37 Miss. 448; Cogburn v. Pollock, 54 Miss. 639.

There was actual fraud in the attachment proceedings. (As both cases at law are identical, we will discuss only one of them.) The attachment was brought about by O. F. West. He went to his sisters and told them he had made a fraudulent conveyance to Kline, and that other creditors would probably attach.   *   *   *

West's intentions were certainly fraudulent, and, this being so, it is not material whether the plaintiff participated in the fraud or not. West procured the attachment to be run, and he was the prime mover therein. Harney v. Peck, 4 S. & M. 229; Farmers' Bank v. Douglass, 11 S. & M. 469.

If mistaken in this, the fact that the amount claimed in the affidavit for attachment was nearly twice as great as the amount really due, and the subsequent proceedings in the attachment proceeding dissolved the attachment in so far as the rights of complainants are to be affected by it.   *   *   *   Drake on Attachment (5th ed.), § 282, and subsequent sections to section 287, as to what will dissolve an attachment.

This attachment operates as a fraud upon the rights of complainants because the attachment was brought by plaintiff in her own name for $600, when it turns out that no such sum is due her, and in fact nothing is due her, but the attachment proceedings are attempted to be proceeded with on a note due O. F. West, guardian, for $374.36, bearing date April 23, 1881, and payable one day after date. This is not a claim upon which attachment at law can be founded. The legal title to said chose in action was in O. F. West, and he alone could sue on it. The plaintiff, having no legal title, could not sue. Chambliss v. Vick, 34 Miss. 109; Falls v. Wilson, 2 Cush. 168; Newell v. Fisher, 2 Cush. 392; Beard v. Griffin, 10 S. & M. 589; Wilson v. McElroy, 2 S. & M. 241; Ecford v. Hogan, 44 Miss. 398; Dowell v. Brown, 13 S. & M. 43, especially.   *   *   *

In Mississippi the Code sets out the character of indebtedness which may be collected by attachment. You may attach for demands founded upon any indebtedness or for the recovery of dam-

ages for the breach of any contract, express or implied, or for claims founded upon any penal statute. Code, § 2414.

And no attachment can be brought for any demand not designated in the statute. Fellows *v.* Brown, 38 Miss. 541.    *   *   *

When a bond is made payable to three persons, an action by one of the obligees cannot be supported by proof of the bond, and this rule cannot be escaped by a declaration setting forth special circumstances to show that the other obligees had no interest in it. The suit should be brought by all the obligees or in the name of all for the use of one.

A judgment covered by the variance will not bar another suit properly brought. McMahon *v.* Webb, 52 Miss. 424.

So O. F. West, guardian, could institute the proper action on the two notes, and the attachment proceedings would not be plead in bar of his action.    *   *   *

The complainants stand in the shoes of the defendants to make such defense to the attachment proceedings as the defendants could and ought to have made thereto.    *   *   *

There is a fatal variance between the affidavit and writ and the declaration in the case, the affidavit and writ being for $600 and the declaration on a note for $374.36. The note is alleged in the declaration to be due the minors. On the proof it is shown to be payable to O. F. West, guardian. The note is not filed with the declaration as required by section 1540 of the Code. By this section it is made a part of the record, and a judgment by default is not valid if this provision is not complied with. See George's Digest, p. 583, tit. " Practice," subtit. " Judgment by Default," and authorities there cited.

When the note is brought out in the evidence, there is a fatal variance between that and the note described in the declaration, so that no judgment could rightfully have been taken on it. Carter *v.* Perkins, 51 Miss. 423.

The Circuit Court acquired no jurisdiction of the attachment proceedings, because the writ was served and returned by a constable. 46 Miss. 544; 55 Miss. 101.

Sarah Bate *v.* Peter Crow, 57 Miss. 676, does not overrule or disturb the rule laid down, but recognizes it as law, and in that case there was an appearance and plea to the writs.    *   *   *

The defendants in this suit in chancery stand squarely upon their rights acquired by their attachment at law. There is no cross-bill, no assertion of any equity, nor prayer for relief on that

account.   We have been unable to find any case at law or in equity where the ward could sue the debtor of the guardian on a note executed to the guardian, or on any obligation made to the guardian, and hence we conclude that such a proceeding could not be maintained.

The nearest approach to similarity in this case and any reported case we have been able to find is that of The King of Spain *v.* R. & J. Oliver, Pet. Cir. Ct. Rep. 276.

That was an action by the King for certain duties on shipments made by the defendants.   The privilege of making these shipments had been conferred on Francis Ouverd & Co., and the Olivers derived their rights from Ouverd & Co.   The court held that the King could not recover the duties due him from the Olivers, saying:   " There is no principle of law which will sanction an action by the creditor against the *debtor of his debtor* upon the ground of contract, for there is no privity between them."   *   *   *

Brief of Oglesby & Taylor:

*   *   *   The second proposition announced by appellants' attorneys in their brief, " That claiming in appellee's declaration a sum *less* than the amount stated in their affidavit for attachment vitiates it," is clearly untenable and is not supported even by the authorities they cite.   The principle announced in the cited authorities, and which we clearly recognize as correct, is simply this: That the attaching creditor cannot, after the beginning of his suit, so alter or change his demand as to increase his indebtedness to the prejudice or injury of another attaching creditor.   This principle had its foundation upon the theory of fraud; but we nowhere find that the attaching creditor forfeits his lien by *lessening* his demand.   Instead of this being a *prejudicial* act, it is a *beneficial one* to the other creditors, as it leaves more surplus to be applied to their debt.   The word " changing " used in Drake is used as a synonym for " increasing."   Certainly no court ever meant to say that if a creditor, believing that $1,000 was due him and, attached for that amount, could not, when he ascertained that only $700 was due, him, change his demand by declaring for the lesser amount, the sum actually due.   This is sustained by Drake, in section 287 and preceding sections, to which attention of the court is called.

The position of appellants, that the minor appellees could not sustain the attachment by their next friend, and could not sue by

*prochein ami,* as they had a guardian, seems to us to be the only question of interest in the case. Before discussing the right to maintain this action, we claim that appellants cannot take any advantage of such defect, if it be one. That this could only be done by proper plea in abatement by the defendants, in the Circuit Court, and that after judgment it cannot be done even by the defendants in that case, and certainly it cannot be attacked collaterally by appellants. 1 Am. Dec. 28; 11 Vt. 293.   *   *   *

The remedy by attachment is given for an action founded upon *any* indebtedness, etc. Code, § 2414. Whether express or implied. Id. And while it may be said that the legal title to the notes of West & Peak was in O. F. West, yet, as between West & McPeak and the minors, the money obtained by West & McPeak was an *indebtedness* to the minors and one they could sue for by next friend, independent of the notes.

If the guardian, who was a member of the firm of West & McPeak, neglected or failed to protect the interests of his wards, when he knew that his firm was insolvent, and were liable to be attached, even admitting that he had the note in his possession, this would not prevent a next friend from attaching West & McPeak (not upon the note necessarily), but upon the indebtedness, the money had and received by that firm which was the property of the minors. They had a sufficient legal interest in the indebtedness to authorize suit by next friend to protect and preserve their rights. *   *   *

The guardian was a member of that firm; they had made fraudulent conveyances; were liable to attachment; the guardian knew this, yet he would not protect the estate of his wards; would not *attach* or *sue* himself, and there was an exigency which admitted of *no delay* and made it imperative for some next friend to protect these girls who were about to be defrauded of their small patrimony. That such action is maintainable is sustained by the following authorities: Thomas *v.* Dike, 11 Vt. 273; 1 Am. Dec. 28; Hardy *v.* Scanlan, 1 Miles (Pa.), 87; Cannon *v.* Hemphill, 7 Tex. 184; Robson *v.* Osborne, 13 Tex. 298; Tyler on Infancy, p. 198.

In Hardy *v.* Scanlan, 1 Miles, 87, the guardian made affidavit that he did not bring nor authorize the bringing of the suit, and expressed a desire that it be dismissed, yet the court permitted suit to be prosecuted by *prochein ami.*   *   *   *

Counsel are mistaken, we think, in the assertion that O. F.

West, guardian, could, notwithstanding the suit by *prochein ami*, Lou West, bring suit and recover upon the notes. The notes were but evidences of debt, and if the minors by next friend sued and recovered the indebtedness, whether upon the notes or upon an action for the money had and received, they would be precluded and barred by the result of that suit, and that judgment could be pleaded in bar of another suit for the same debt. See 13 Tex. 306; Tyler on Infancy, 198; 7 Tex. 184.

We think from the authorities above cited that it is well settled that the minors could sue by next friend, especially in this case where their testamentary guardian was both the guardian and also a member of the firm of West & McPeak, a *debtor to his wards.* * * *

The objections to the declaration in the Circuit Court, we do not think, can avail appellants after judgment. While perhaps they are inaccurately drawn, and ought perhaps to have had other and different counts than were stated, yet as no demurrer or other objection was had to them in the Circuit Court, appellants could make none.

But suppose the proceedings are so irregular as to have the court to say that the judgment is voidable, then they cannot attack it collectively, and authorities are not needed in support of that proposition. If *void,* we *lose* on behalf of appellees no *rights;* nor do the appellants *acquire any.* If it be void, mere "*brutem fulmen,*" we as well as they can disregard it, and in law the attachment causes are still pending, and at the next term of the Circuit Court the void judgment can be disregarded by us; leave can be had to amend declaration if necessary; the return of the attachment writ perfected and a legal judgment obtained. If conceded that the judgment is void none of our rights are diverted, and from it no rights are obtained by appellants. Freeman on Judgments, 116, 117.

We would still have the lien created by the levy of the attachment, in law (there being no judgment, and a void judgment is none). The attachment suit is still pending in Circuit Court, and unless appellants have shown a right to the property *superior* to the lien given by the attachment, it is immaterial whether any judgment has ever been rendered.

The judgment does not create the lien. Its only purpose is to consummate and perfect it. The levy creates the lien, the judg-

ment perfects it, and the sale is to ascertain value of the property attached, the title of which was diverted by the levy.   1 How. 43; 4 S. & M. 579; 12 S. & M. 622; 52 Miss. 558.

OPINION.—CAMPBELL, C. J., delivered the opinion of the court:

The controlling principle of this case is settled by Jones *v.* Moody, 59 Miss. 327.   The appellants have no right to complain of the irregularity in the suits brought by appellees.   It appears that they were creditors of the partnership of West and McPeak, and having obtained a lien by attachment, a court of chancery will not wrest from them their advantage because of irregularity to which the defendants in the attachments did not object.

The appellants are not in a position to complain of the fact that the record does not show that the writs of attachment were returned by the sheriff.   It is not material in this controversy that the record does not show this.   A lien was created by the levy of the attachments and before their return injunction was issued at the suit of appellants, and their bill merely put in issue the validity of the attachments.

The validity of the judgment subsequently obtained after a modification of the injunction was not put in issue.

Decree *affirmed.*